PER CURIAM.
The Department of Revenue (DOR), acting on behalf of Mary A. Thorman (the mother), appeals a final order ruling that *1201 Robert G. Holley (the father) is no longer obligated to pay any child-support arrear-ages that he accrued but may not have satisfied. This ruling was based on the doctrines of laches and estoppel, as well as a determination that the father’s right to due process was violated by the numerous delays in arriving at a final arrearage amount. Under the circumstances of this case, none of these grounds justify relieving the father of his obligation to pay his past-due child support and the interest that has accrued thereon. Accordingly, we reverse and remand for entry of a final order establishing the amount of arrearag-es, if any, the father still owes.
As noted by the circuit court, this case has a lengthy and complicated history. The mother and father were divorced in 1984. Under the divorce decree, the father was ordered to pay support for two children. The younger child reached the age of eighteen in 1998. By that time, the father had accrued child-support arrearag-es of at least $26,626.48. In May 2003, the circuit court, acting on the recommendation of a child support enforcement hearing officer, entered an order providing that the amount of the father’s arrearages was $10,552.67. The order notes that the ar-rearage amount represented the net owed after application of a lump-sum payment from the Social Security Administration of $13,632.00.
In December 2004, DOR filed a motion to establish arrearages. On the same day, the clerk of the circuit court issued a payment record indicating that the father had a credit on his account. At the hearing that followed, DOR advised the hearing officer that there was a mistake in the May 2003 order, as the lump-sum payment from Social Security had never been received. DOR explained that when the parties appeared before the court in the proceedings leading to the May 2003 order, the lump-sum payment was merely anticipated. Understanding that the error in the May 2003 order amounted to a mistake of fact, the hearing officer opined that it was too late to correct the error because more than one year had passed since entry of the order. On February 7, 2005, the circuit court adopted a recommended order stating that DOR’s “motion to set aside” the May 2003 order was denied. DOR moved for rehearing ten days later, arguing that the mistake in the May 2003 order was a clerical error.
The court did not rule on the motion for rehearing until December 2006. At that time, the court adopted the hearing officer’s recommended order concluding that subtraction of the anticipated lump-sum payment from the father’s arrearages was indeed a clerical mistake. The court then found that the interests of justice required that the arrearage issue be revisited, essentially vacating the May 2003 order. The court reserved jurisdiction to determine the amount of the arrearages.
No further action took place in the case until approximately three years later when, in February 2010, DOR filed a motion to establish arrearages. The father moved to dismiss this action, alleging that he had actually overpaid his child-support obligation. At a hearing on the motion to dismiss, the father orally argued that DOR’s claim for arrearages was barred by the doctrines of laches and “detrimental reliance.” The motion to dismiss was denied, and the case proceeded to a hearing to establish the amount of arrearages.
The hearing took place in January 2011. At the hearing, the father orally renewed his motion to dismiss, arguing that dismissal was justified by due-process violations he contended had occurred throughout the case. The hearing officer rejected the father’s due-process arguments, concluding that no prejudice stemmed from *1202 the delays. DOR then presented evidence that the father still owes $11,740.30 in arrearages. To contest this claim, the father presented testimony that he had received official notification in 2004 that his child-support obligation was satisfied. In addition, he testified that the income deduction order associated with this obligation had been lifted and that he had received the certificate showing a credit in his account in December 2004. The father and his current wife further testified that they had relied on these events as indicating that he no longer owed any child-support arrearages. He also presented testimony concerning his financial condition, indicating that he no longer has the ability to pay child-support arrearages.
Ultimately, the hearing officer found that there were outstanding arrearages of $11,740.30 as of January 6, 2011, and submitted a recommended order establishing this amount and denying the father’s oral motion to dismiss. The circuit court adopted the order, and the father timely moved to vacate it under Family Law Rule of Procedure 12.491(f). In the motion to vacate, the father asserted that the amount of arrearages the hearing officer found was incorrect and that alleged due-process violations required vacation of the circuit court’s order. At a hearing on the motion to vacate, the father argued that his right to due process had been violated by the delay in the determination of the final amount of his arrearages, citing the adage that justice delayed is justice denied. In addition, the circuit court opined that the father’s arguments suggested the applicability of the doctrines of laches and equitable estoppel. The circuit court invited the parties to argue these issues and submit memoranda of law on them. DOR participated in this process without objection. After reviewing the parties’ arguments, the circuit court acted on the motion to vacate by entering an order concluding not only that the doctrines of estoppel and laches applied but also that DOR’s unreasonable delay in seeking an arrearage determination after the vacation of the May 2003 order militated against establishing arrearages in 2011. The court found that the father’s circumstances had changed during the period of delay and that he had a right to rely on the representation to him that he did not owe child-support arrearages. DOR appealed this order.
DOR argues that the circuit court erred in three ways: (1) by considering the doctrines of laches and estoppel in the absence of an attempt by the father to plead these issues or prove them at an eviden-tiary hearing; (2) by applying the doctrines of laches and estoppel without sufficient evidence; and (3) by vacating the final order establishing arrearages on the basis of a violation of due process. We decline to address the first argument because DOR failed to object to the circuit court’s consideration of the doctrines at issue, even though it had a clear opportunity to do so. See Matar v. Fla. Int’l Univ., 944 So.2d 1153, 1157-58 (Fla. 3d DCA 2006) (recognizing that the preservation requirement applies even to issues of due process when there has been a clear opportunity to present the argument on appeal to the lower tribunal). DOR provided arguments on the applicability of these doctrines to the facts in the record, without voicing any objection concerning the procedural propriety of taking these doctrines into account. However, we find preserved, reversible error under DOR’s remaining arguments.
A trial court’s application of the doctrines of either laches or equitable es-toppel is reviewed for abuse of discretion, provided that there is competent, substantial evidence for each element of the doc *1203 trine applied. See Sun Cruz Casinos, L.L.C. v. City of Hollywood, Fla., 844 So.2d 681, 684-85 (Fla. 4th DCA 2003) (recognizing the abuse of discretion standard and the requirement of evidentiary support for a finding of estoppel); Cartee v. Carswell, 425 So.2d 204, 206 (Fla. 5th DCA 1983) (finding no abuse of discretion where the trial court found that no equitable principles, including laches, relieved the father of the duty to pay child support); Fla. Dep’t of Revenue ex rel. Hewett v. Grant, 913 So.2d 108, 109 (Fla. 1st DCA 2005) (reversing where the evidence was insufficient to support the doctrine of lach-es); State, Dep’t of Revenue ex rel. Dees v. Petro, 765 So.2d 792, 792 (Fla. 1st DCA 2000) (reviewing the application of equitable estoppel for competent, substantial evidence).
Laches has four elements: (1) conduct on the part of the defendant giving rise to the situation of which the complaint is made; (2) failure of the plaintiff to assert his or her rights by suit, even though the plaintiff has had knowledge of the defendant’s conduct and has been afforded the opportunity to institute suit; (3) lack of knowledge on the defendant’s part that the plaintiff would assert the right on which he or she bases the suit; and (4) injury or prejudice to the defendant in the event relief is accorded to the plaintiff or the suit is held not to be barred. McIlmoil v. McIlmoil, 784 So.2d 557, 563 (Fla. 1st DCA 2001). It is proper to apply the doctrine of laches to child support matters, including the establishment of arrearages, only “under the rarest of circumstances.” Hewett, 913 So.2d at 109 (quoting Ticktin v. Kearin, 807 So.2d 659, 663-64 (Fla. 3d DCA 2001)). The prejudice to the defendant must be extreme to justify applying the doctrine of laches to a child support matter. Ticktin, 807 So.2d at 664.
A mere delay in filing suit is insufficient to establish the applicability of lach-es to “relieve a parent from the obligation to support his or her child.” Hewett, 913 So.2d at 109. Even when the delay is accompanied by a change of financial condition, these circumstances standing alone do not justify the application of laches. See id. Rather, there must be some evidence that the change of financial condition was caused by the delay, such that the change of conditions would render enforcement of the right asserted inequitable. See Logan v. Logan, 920 So.2d 796, 799 (Fla. 5th DCA 2006) (holding that the former husband failed to show the required prejudice where he did not testify that he would have acted differently during the period of delay if he had known the former wife would assert the children’s right to child support).
The doctrine of equitable estop-pel involves similar elements to laches, and the same considerations militate against applying it to child-support matters except under rare circumstances. Equitable es-toppel may bar recovery of a child-support arrearage only when there is “a showing that a party misrepresented a material fact upon which the party asserting estop-pel relied.” State, Dep’t of Revenue ex rel. Dees v. Petro, 765 So.2d 792, 792 (Fla. 1st DCA 2000). To satisfy the reliance prong of equitable estoppel, the party asserting the defense must prove that he or she made a detrimental change of position based on a belief in the misrepresented fact. Schroeder v. Peoplease Corp., 18 So.3d 1165, 1168 (Fla. 1st DCA 2009). Thus, the elements of equitable estoppel are “(1) a representation as to a material fact that is contrary to a later-asserted position; (2) reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel, *1204 caused by the representation and reliance thereon.” Id. (citations omitted).
The evidence in the instant case was insufficient to meet the prejudice prong of laches or to establish any aspect of equitable estoppel. As to prejudice, although the father testified that he is presently unable to pay the arrearages, he did not testify that the delay in asserting the right to child support arrearages affected his financial decision-making during the period of delay. As to the doctrine of equitable estoppel, the father failed to present evidence of any misrepresentation by DOR or the mother. Additionally, although he stated he relied on the certificate issued by the clerk of the court in December 2004 indicating that he did not owe any past-due child support, he did not connect this reliance with any detrimental effect on his financial condition. Essentially, although he used the word “relied,” he testified simply that he believed the representation made on the certificate. Based on the evidence presented, the facts of this case do not justify the application of either equitable doctrine at issue.
The remaining inquiry is whether any alleged violations of due process justify the result the circuit court reached. Whether a violation of due process has occurred under a given set of facts is an issue of law to be reviewed de novo. Dep’t of Rev. ex rel. Poynter v. Bunnell, 51 So.3d 543, 546 (Fla. 1st DCA 2010). The right to procedural due process, which the father argues was offended here, includes notice and a meaningful opportunity to be heard. See id. Although the father asserted that he was not afforded notice of and an opportunity to be heard on certain matters, the circuit court did not make any findings in agreement with these assertions, and the record is insufficient to allow us, as an appellate court, to conclude that these claims are established as a matter of law. The circuit' court’s conclusion that the father was deprived of due process was based on the delay between the reservation of jurisdiction in December 2006 and the ultimate establishment of arrearages in January 2011.
The circuit court’s due-process analysis was based on the principle that litigants are entitled to as much finality as possible when a court is called upon to decide an issue. However, neither the father nor the circuit court cited any cases holding that an indefinite reservation of jurisdiction is a violation of due process. In some cases, such a reservation is improper and subject to reversal on appeal from the order reserving jurisdiction. See, e.g., Herman v. Herman, 889 So.2d 128 (Fla. 1st DCA 2004); Gergen v. Gergen, 48 So.3d 148 (Fla. 1st DCA 2010); Martinez v. Martinez, 573 So.2d 37 (Fla. 1st DCA 1990); Gruner v. Westmark, 617 So.2d 420 (Fla. 1st DCA 1993); Bovet v. Bovet, 563 So.2d 154 (Fla. 3d DCA 1990). But there is no violation of the right to due process unless the litigant is deprived of either notice or a meaningful opportunity to be heard before the court reaches a final decision on the matter as to which jurisdiction has been retained. See Poynter, 51 So.3d at 546 (defining the constitutional right to procedural due process); West v. West, 301 So.2d 823, 824 (Fla. 2d DCA 1974) (holding that another state’s reservation of personal jurisdiction over a Florida resident for the purpose of modifying its decree may last “as long as the effectiveness of the decree” and that no due-process violation occurs by the entry of a default modification against the Florida resident if the Florida resident was afforded proper notice). The father has not disputed that he received the December 2006 order reserving jurisdiction and the February 2010 motion that precipitated the final establishment of arrearag-es. Although we do not approve of the *1205 delays that took place in this case, we note that the father himself could have ended the delay by asking the court to establish the amount of arrearages at some point between the reservation of jurisdiction in December 2006 and the filing of DOR’s motion in February 2010.
Even if we were to conclude that an extended reservation of jurisdiction is a violation of the right to due process, we do not agree with the circuit court that relieving a parent of the obligation to pay child-support arrearages is the proper remedy. The doctrines of equitable estoppel and laches were the available means by which any injury the father suffered could have been redressed, if the circumstances justified any redress. Because the father failed to establish sufficient circumstances under one of these two doctrines, he is still obligated to pay any unsatisfied arrearag-es. Therefore, we reverse and remand to the circuit court to enter a final order establishing the- amount of arrearages, if any, the father has failed to pay.
REVERSED and REMANDED.
BENTON, C.J., WETHERELL, and RAY, JJ., concur.